### ST. LOUIS SOUTHWESTERN RY. CO. v. BRITTON.

(Circuit Court of Appeals, Eighth Circuit. September 1, 1911.)

No. 3,561.

CARRIERS (§ 318*)—INJURY TO PASSENGER—EVIDENCE.

In an action for injuries to a passenger, caused by an alleged sudden stop following the derailment of a car, physical facts *held* to require a verdict for defendant on the ground that plaintiff could not have been injured in the manner claimed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1307–1314; Dec. Dig. § 318.*]

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Action by Willa Britton against the St. Louis Southwestern Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

William T. Wooldridge (Samuel H. West, Frank G. Bridges, and Nicholas J. Gantt, Jr., on the brief), for plaintiff in error.

Frank Pace (Jeff Davis, on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and MARSHALL and WM. H. MUNGER, District Judges.

WM. H. MUNGER, District Judge. Willa Britton, as plaintiff, brought this action against plaintiff in error, as defendant, to recover damages for an alleged personal injury caused, as stated, by the negligence of defendant.

The evidence in the case discloses the sad life of a very unfortunate young lady. Plaintiff, at the trial November 2, 1910, testified that she was 19 years of age, and was married on August 6, 1906 (age 15). In June, 1907, after a miscarriage, her doctor performed a curetment. In September, 1909, she was operated upon, and a tumor removed from one of her ovaries. In December following she was operated upon for appendicitis, and in April, 1910, was operated upon for gall stones. At that operation it was discovered that she had adhesions of the intestines on the right side, and the doctor declined to proceed farther with the operation on account of the danger to her life. He said she would suffer from these adhesions until she was operated upon and had them broken up, and advised her to go to a specialist, recommending Mayo Bros.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

She left the hospital on the 23d of June, 1910, went to a boarding house, remained until the 8th of July, when she took a young sister to the country. Returning on the 11th, she purchased at the station of England a ticket to Little Rock, and became a passenger upon the train of the defendant road between England and Little Rock. The train consisted of an engine, tender, baggage car, and two passenger coaches. The seats in the coach were double cushioned seats. She seated herself near the center of the rear coach on the left-hand side of the car, facing in the direction the train was going. She was alone in the seat and sat near the aisle. After the train had left England some little time the forward wheels of the front trucks of the tender left the rails, supposedly on account of the lowering of the track, caused by the roadbed being softened from rains. The engineer, immediately discovering from the sound that these wheels were off, applied his air brake, slowed down, and stopped the train. Plaintiff testified that the train stopped with such a sudden jerk or jolt that she was thrown against the window sill and her left side and back injured. When the train stopped the male passengers got out of the car to ascertain the cause of the stoppage. There were three lady passengers in the coach in which she was sitting. They (with plaintiff) got up, walked to the rear of the coach, and looked out to see if they could ascertain why the train had stopped. In about 15 minutes the wheels were replaced on the rails and the train started. After returning to her seat, and after the train had started, the motion of the car made her sick. Her illness seemed to increase before the train reached Little Rock, and she received attention from some of the other passengers. On reaching Little Rock she was taken to a hospital, and has been attended by physicians since. She claims that the injury resulting from her being thrown against the window sill injured her back to such an extent that her lower limbs have become in a measure paralyzed. At the trial she was brought into court on a stretcher, and demonstrations were made to establish the paralyzed condition of her limbs by sticking pins into them in view of the jury.

As to whether or not the car stopped in a sudden manner, so as to throw her against the window sill, her testimony stands alone, unsupported by that of any other. In addition to the trainmen, who testified that the train stopped by slowing down gradually, nine passengers upon the train also testified that there was no sudden stop, jerking, or jolting of the train. One of the passengers testified that he was looking directly at her when the train came to a stop, and that she was not thrown against the window sill. Another one was writing, and observed nothing unusual until the train stopped. While the burden was upon the plaintiff to establish her injury by a preponderance of the testimony, the preponderance is not determined by the number of witnesses alone; and, were this all, we might not be inclined to disturb the verdict of the jury, who saw the witnesses and observed the manner in which they gave their testimony. But it is apparent, from a consideration of the physical facts, that plaintiff is mistaken. She was sitting in the seat, she testified, facing in the direction the train was going. She was not sitting next to the window, but near the aisle, and

a sudden stopping of the train would have precipitated her forward, not thrown her sideways some distance to the window. Sitting where she was, had she been suddenly thrown sideways against the window sill, she would not have been struck in the side and back below the ribs, but much higher up, at or about the shoulders.

Plaintiff's testimony was taken by deposition several weeks before the trial. Her testimony was somewhat different then as to the manner of her injury than that given at the trial. In her deposition she stated that her left side struck the window sill just below the ribs. Upon the trial her testimony was that it was the left side and back that struck the window sill. We, however, leave out of consideration any discrepancy in her statements. Plaintiff had at times suffered severe pains about her right side before and after the operation, which disclosed that she had adhesions of the intestines. Her sufferings were such that one and sometimes two or more hyperdermic injections of morphine were required to ease her pain, and she at times manifested symptoms of hysteria. However much plaintiff may enlist our sympathy, she is not entitled to a judgment against defendant, unless its wrongful act has contributed to produce her present condition. We are fully persuaded, from a careful consideration of all the testimony, viewing it in the most favorable light for plaintiff, that she was not injured by being thrown, and was not thrown, against the car window, but that she labors under an hallucination in this respect.

The requested instruction for a directed verdict in favor of the defendant, after the close of the trial, should have been given. For the refusal to give it, the judgment is reversed, and a new trial ordered.